IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMESENA KENION, | * | |
| Plaintiff, | * | |
| | | Civil Action No. RDB-18-3344 |
| v. | * | |
| SKANSKA USA | * | |
| BUILDING, INC, *et al.* | | |
| | * | |
| Defendants. | | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff Thomesena Kenion ("Plaintiff" or "Kenion") alleges that her former employer, Defendant Skanska USA Building, Inc. and Skanska USA, Inc. (collectively, "Skanska") and her former supervisors, Defendant William Lemley ("Lemley") and Defendant Brian Leier ("Leier") (collectively, the "Defendants") discriminated against her on the basis of her race and sex between November 2016 and May 2018. Kenion's eight-Count Complaint brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.* and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01, *et seq.* Now pending before this Court are two Motions: Defendants' Motion to Partially Dismiss Plaintiff's Complaint (ECF No. 3) and Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 8). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Defendants' Motion to Partially Dismiss Plaintiff's Complaint (ECF No. 3) is GRANTED and Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 8) is GRANTED. Specifically, Counts I, II, IV, and VIII are DISMISSED in their entirety, and the remaining Counts III, V, VI, VII are

limited as noted. The following claims remain pending: Discriminatory Non-Selection for Promotion on the basis of sex in Violation of Title VII (Count III) and on the basis of both race and sex in violation of the DCHRA (Count VII); Discriminatory Hostile Work Environment on the basis of race in Violation of the DCHRA (Count V); and Retaliation under DCHRA (Count VI). Plaintiff is granted leave to file an Amended Complaint to clarify the nature and scope of her Hostile Work Environment Claim under the DCHRA as charged in Count V.

## BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Kenion is an African American[1] female pursuing a career in the construction industry. (Compl. ¶ 2, ECF No. 1.) In April 2013, Skanska Civil Southeast, Inc. hired Kenion as a Carpenter Apprentice. (*Id.* at ¶ 21.) Subsequently, she received several promotions and was granted additional responsibilities in recognition of her successful work performance. In August 2014, she became a Carpenter and Punch List Foreman (*Id.* at ¶ 22.) By August 2015, Kenion was supervising a crew of 15 workers on the 1st Street Tunnel project in Washington, D.C. and was featured in Skanska's promotional advertisements throughout the District of Columbia. (*Id.*) In May 2016, Kenion accepted a transfer, pay raise, and career development plan position as a Craft Foreman in Skanska USA Building, Inc. at its "American University Project." (*Id.* at

---

[1] This Memorandum Opinion employs racial identifiers such as "African American," "Black," "Caucasian," "Hispanic," and "White" as they are used in the Complaint.

¶ 23.) A Project Assignment Letter pertaining to this business unit transfer dated May 10, 2016 indicates that Kenion was an "Assistant Superintendent." (*Id.*)

Kenion alleges that she began experiencing discrimination in November 2016, after she was reassigned to Skanska's "DC Water Headquarters Project" and began working for Lemley and Leier, both of whom are identified in the Complaint as Caucasian males. (*Id.* at ¶¶ 3, 6, 25.) Lemley and Leier were allegedly "hostile, rude, or dismissive" toward Kenion and Skanska's African American subcontractors but did not treat White and Hispanic supervisors and workers in the same negative fashion. (*Id.* at ¶ 26.) For example, in December 2016 Leier rejected Kenion's request for stone to compact a potentially unsafe worksite, citing budgetary concerns. (*Id.* at ¶ 27.) Only one week later, however, Lemley requested and received two loads of stone for comparable work nearby. (*Id.*)

Between January and March 2017, both Lemley and Leier allegedly made several disparaging remarks about African American laborers. Lemley is alleged to have stated that "they're not that smart" and that African Americans were "lazy." (*Id.* at ¶ 29.) Lemley also admonished a Black laborer as follows: "All I asked you to do was sweep and you can't even get that right. You don't need a college education to do that. Hispanic guys know how to work without someone holding their hand." (*Id.*) Kenion reports overhearing Lemley disparaging his daughter's African American boyfriend, referring to him as a "Baltimore thug." (*Id.* at ¶ 30.) Kenion claims to have been present during a conversation between Lemley and an African American laborer who had dreadlocks, during which Lemley asked "Do you wash your hair?" and said that "You couldn't pay me to have those things." (*Id.* at ¶ 31.) In response to a city Compliance Officer's request for the contact information of African American

3

trainees, Leier allegedly told Kenion not to provide the information because the workers in question "don't speak well" and he did "not want them embarrassing us." (*Id.* at ¶ 32.) Leier instructed Kenion to deal with African American laborers "with a heavy hand," but did not make similar statements about Skanska's White or Hispanic workers.

Lemley and Leier allegedly stymied Kenion's professional development and caused her to fear for her job security. For example, Lemley denied Kenion permission to attend a Skanska Women's Network professional development event even though he regularly allowed the White female Engineer on the DC Headquarter Water Project team to attend such events. (*Id.* at ¶ 35.) In March 2017, an Assistant Project Manager told Kenion that "Bill [Lemley]'s not really interested in developing you for [the Assistant Superintendent] role." (*Id.* at ¶ 36.) In the summer of 2017, Leier refused to grant Kenion permission to participate in a Leadership in Energy and Environmental Design (LEED) training because "it was not a priority for her." (*Id.* at ¶ 37.) On November 27, 2017, when Kenion informed Lemley that she needed one day of sick leave to care for her twin sons who were will, Lemley allegedly responded, "You need a job to do that." (*Id.* at ¶ 38.) Fearing for her job, Kenion promptly applied for Family Medical Leave Act ("FMLA") protections. (*Id.*) That same month, Leier informed Kenion that, because she was a Craft employee, she would not receive a 3% pay increase that every other Skanska Building employee would be receiving.[2] (*Id.* at ¶ 39.) Also in November 2017, Leier allegedly denied Kenion the opportunity to complete a self-evaluation for her annual performance rating necessary for her advancement at Skanska. (*Id.* at ¶ 40.) Leier explained

---

[2]     The Complaint does not indicate whether this exchange occurred before or after Kenion requested time off to care for her child.

that Kenion was not entitled to this evaluation because she was a Craft employee earning an hourly wage. (*Id.*) Kenion challenges the veracity of this assertion, alleging she had completed a self-evaluation in 2017 while assigned as a Craft Foreman to Skanska Building's American University Project under different managers. (*Id.*)

Kenion complains that Lemley and Leier failed to promote her to the position of Assistant Superintendent for discriminatory reasons. In the summer of 2017, Lemley and Leier advised Kenion that James Moffitt, a college intern hired by Skanska and a Caucasian male in his early twenties, would be shadowing her on the DC Water Headquarters Project construction site and would be supervising the laborers there. (*Id.* at ¶ 41.) In contrast, another college intern hired that summer, Danielle Hendricks, a Black female in her early twenties, was tasked with performing office administrative work, but was not assigned to supervise staff. (*Id.* at ¶ 42.) For several months, Kenion trained Moffitt while carrying out supervisory job duties which were "functionally equivalent" to the duties of an Assistant Superintendent. (*Id.* at ¶ 43.) Skanska even identified Kenion as the Assistant Superintendent for the D.C. Water Headquarters Project on its organizational chart, although she did not formally hold this position. (*Id.*) On December 11, 2017, Kenion learned that Moffitt would be hired for the position instead of her, even though Moffitt did not meet the job's requirement of "5+ years of industry experience." (Id. at ¶¶ 44, 46, 47.) The position was never advertised, and Kenion was not afforded the opportunity to apply or compete for it, even though she had far more industry experience than Moffitt. (*Id.* at ¶ 45.) Whereas Kenion had by that time worked for several years at Skanska, Moffit had allegedly only worked two summers as a college intern at two different construction companies. (*Id.* at ¶¶ 45, 47.) On December 11, 2017, Skanska

5

Building's Vice President of Operations, Darick Edmond, told Kenion that she was not selected for the position because the decisionmakers "would not feel comfortable putting her in a position that she didn't know 100%." (*Id.* at ¶ 48.) Kenion alleges that this explanation was pretextual; Moffitt himself allegedly did not have a full grasp of the position and frequently turned to Kenion for guidance concerning his job duties. (*Id.* at ¶ 49.)

In late 2017, Kenion complained about the unfair treatment she was experiencing. In November 2017, Kenion discussed Lemley's actions with Leier and stated that she felt discriminated against "either because she was a woman or Black." (*Id.* at ¶ 50.) Leier took no corrective action and instead merely responded "that's just the way Bill is." (*Id.*) On December 11, 2017, Kenion met with Skanska USA, Inc.'s Human Resources Director and Leier to address the discrimination she perceived on the job. (*Id.* at ¶ 51.) Specifically, she complained about Lemley's treatment of her and discrimination against minorities; being denied a 3% pay raise; having no opportunity to complete a self-assessment for her annual performance evaluation; the lack of support from Lemley and Leier concerning her job advancement; and her non-selection for promotion to Assistant Superintendent. (*Id.*) This was not the first time Human Resources had heard complaints about Lemley. (*Id.* at ¶ 52.) Kenion alleges, "upon information and belief" that in the Spring of 2016, a male African American Craft Foreman complained that Lemley had called him a "nigger." (*Id.*) In response to Kenion's complaints, Skanska gave Kenion the 3% pay raise that she had requested and allowed her to complete a self-assessment. (*Id.* at ¶ 54.) Skanska also directed her and Lemley to "have a conversation regarding communication styles." (*Id.*)

Kenion was allegedly retaliated against for making her complaints. After the December 11, 2017 meeting with Human Resources, Skanska changed her work hours. In an effort to bring up to speed the lagging DC Water Headquarters Project, Kenion ordinarily worked nine to ten hours per workday, resulting in one to two hours of overtime pay each day of the workweek. (*Id.* at ¶ 56.) After she made her complaint, however, Lemley prohibited Kenion from working more than eight hours per day, causing her to lose overtime pay. (*Id.*) Lemley further instructed Kenion to work on weekends, allegedly knowing that Kenion would have difficulty accommodating this request because she was raising two children and taking classes in pursuit of an Associate's Degree in Construction Management. (*Id.* at ¶ 57.) No White employees were required to work weekends regularly. (*Id.*) Lemley also routinely required Kenion to report to work on Saturdays and Sundays after her classes and during periods of inclement weather, a requirement he did not impose on other employees. (*Id.* at ¶ 58.) Skanska further retaliated against Kenion by requiring her to submit her self-assessment outside of her supervisory chain rather than to her supervisor, Lemley, as was customary and by failing to ensure that she received feedback on her self-assessment and obtained career development guidance as required by company policy. (*Id.* at ¶¶ 59, 60.)

Kenion alleges that Skanska's failure to adequately address her concerns left her no choice but to resign. She alleges that she waited between December 2017 and March 2018 for Skanska to take further action to remedy the discrimination she was experiencing. (*Id.* at ¶ 61.) Finally, unable to tolerate the on-going retaliation and roadblocks to advancement, Kenion submitted a letter of resignation on March 2, 2018. (*Id.* at ¶¶ 62-63.)

On February 22, 2018 Kenion contacted the Equal Employment Opportunity Commission ("EEOC") and complained of discrimination at Skanska. (*Id.* at ¶ 18.) On June 15, 2018 Kenion filed a Charge of Discrimination which alleged as follows:

> I was employed with the above-named Respondent since spring of 2011, until I resigned on or about spring of 2018.
>
> I was subjected to different terms and conditions of employment by the above-named Respondent. For example, Respondent failed to keep its promised [sic] of promoting me officially to the position of Assistant Superintendent. Instead evidence would show that I was named the Acting Assistant Superintendent while also performing the duties of a Foreman [my primary job title/duties], but was never paid officially as an Assistant Superintendent. Instead Respondent hired a less qualified male who I had trained as an intern.
>
> I believe I have been discriminated against due to my sex [female] in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Def. Ex. 1, ECF No. 3-2.) On September 5, 2018, the EEOC issued a final dismissal and notice of right to sue. (*Id.* at ¶ 19.) On October 29, 2018, within 90 days of receiving her right-to-sue notice, Kenion commenced this lawsuit. (*Id.* at ¶ 20.) The Complaint brings eight counts, styled in the following manner: Discriminatory Hostile Work Environment in Violation of Title VII (Count I); Retaliatory Hostile Work Environment in Violation of Title VII (Count II); Discriminatory Non-Selection for Promotion in Violation of Title VII (Count III); Constructive Discharge in Violation of Title VII (Count IV); Discriminatory Hostile Work Environment in Violation of the DCHRA (Count V); Retaliatory Hostile Work Environment in Violation of the DCHRA (Count VI); Discriminatory Non-Selection for Promotion in Violation of the DCHRA (Count VII); and Constructive Discharge in Violation of the DCHRA (Count VIII). On January 2, 2019, Defendants filed a Motion to Partially

Dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

**I.    Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.**

Defendants have moved to dismiss the Complaint based on Plaintiff's failure to satisfy Title VII's administrative exhaustion requirements. At the time Defendants filed their Motion, the courts of this circuit adhered to the rule that the failure to exhaust administrative remedies under Title VII deprives federal courts of subject matter jurisdiction over subsequently asserted claims. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009). Accordingly, Defendants invoked Rule 12(b)(1) of the Federal Rules of Civil Procedure. In this most recent Term of Court, the United States Supreme Court held that Title VII's administrative exhaustion requirements are not jurisdictional in nature and therefore "must be timely raised to come into play." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843 (2019). The exhaustion requirements are more properly considered "claim-processing rules" which, although not jurisdictional in nature, nevertheless must be followed. *Id.* at 1849, 1851 (holding that Title VII's claim-processing rules are "mandatory" and that the court must enforce them). The import of *Fort Bend* is that Defendants may waive arguments related to administrative exhaustion by failing to raise them in a timely fashion. Timely raised, such objections may still warrant dismissal under Rule 12(b)(6) of the Federal Rules. *See, e.g., Stewart v. Iancu*, 912 F.3d 693, 701-702 (4th Cir. 2019) (holding that Title VII's mandatory 180-day waiting period requirement is akin to a mandatory claim-processing rule and further considering whether dismissal was appropriate under Rule 12(b)(6) for plaintiff's alleged failure to adhere to the

9

rule); *see also Carter v. Montgomery Cty.*, TDC-18-2249, 2019 WL 3804765, at *2 (D. Md. Aug. 13, 2019) (construing motion to dismiss under Rule 12(b)(1) for failure to exhaust administrative remedies as a motion to dismiss under Rule 12(b)(6) in light of the Supreme Court's decision in *Fort Bend*).

## II. Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S. Ct. 1937 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal

10

quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

Accordingly, in ruling on Defendants' Motion to Dismiss, this Court will consider Plaintiff's EEOC Charge. *See Bowie v. Univ. of Maryland Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint." (citations omitted).

## ANALYSIS

11

Defendants advance three arguments in support of their motion to dismiss the Complaint in part. First, Defendants seeks dismissal of Plaintiff's Title VII claims for hostile work environment based on race and sex (Count I); retaliation (Count II); non-selection/failure to promote based on race (Count III); and constructive discharge based on race and sex (Count IV), arguing that these claims fall outside the scope of Plaintiff's EEOC Charge of Discrimination. (Defs.'s Mot. to Dismiss 1-2, ECF No. 3.) Second, Defendants argue that Plaintiff's Title VII and DCHRA sex-based hostile work environment claims (Counts I and V) should be dismissed because the Complaint fails to allege any sex-based harassment or complain of "severe or pervasive" misconduct. (*Id.* at 2; Defs.'s Reply 12, ECF No. 7.) Third and finally, Defendants argue that Plaintiff's Title VII and DCHRA constructive discharge claims based on race and sex (Counts IV and VIII) must be dismissed because she has failed to adequately allege that (a) Defendants deliberately intended for her to resign; and (b) that her working conditions were so intolerable that any reasonable person in her position "would have had no choice but to resign. (Defs.'s Mot. to Dismiss 2.) These arguments are addressed *seriatim*.

## I. Plaintiff Has Failed to Exhaust Administrative Remedies as to Certain Claims.

Defendants urge this Court to dismiss Plaintiff's Title VII claims for hostile work environment based on race and sex (Count I); retaliation (Count II); non-selection/failure to promote based on race (Count III); and constructive discharge based on race and sex (Count IV), arguing that these claims fall outside the scope of her administrative charge before the EEOC. Plaintiff advances these same claims under both Title VII and the DCHRA. The DCHRA "generally does not require exhaustion of administrative remedies." *See Hunt v.*

12

*District of Columbia Dep't of Corrs.*, 41 F. Supp. 2d 31 (D.D.C. March 26, 1999). Accordingly, Defendants seek dismissal of only certain claims brought pursuant to Title VII based on the Plaintiff's alleged failure to adequately exhaust her administrative remedies.

Before filing suit in federal court, plaintiffs asserting Title VII claims must exhaust their administrative remedies by bringing a charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 327 (4th Cir. 2000). The Charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). These requirements ensure that the employer is put on notice of its employees' claims and is afforded an opportunity to resolve them out of court. *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005).

In a subsequent suit, plaintiffs may only advance those claims which are "are reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." *Smith*, 202 F.3d at 247. Mindful that complainants typically advance EEOC charges without the assistance of counsel, courts afford their scope a liberal construction. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted). Nevertheless, courts may not permit plaintiffs to assert one type of discrimination in an EEOC charge and later pursue other types of discrimination in formal litigation. *Id.* For example, plaintiffs will be barred from bringing sex discrimination claims in federal court if they have only advanced a race discrimination claim before the EEOC. *Id.* Litigants are likewise prohibited from advancing a failure-to-promote claim for the first time in the Complaint. *See, e.g.*, *Wright v. Kent Cty Dep't of Soc. Servs.*, ELH-12-3593, 2014 WL 301026, at *12 (D. Md. Jan. 24, 2014) (collecting cases).

In this case, Kenion's EEOC charge is clearly constrained to sex-based discrimination and failure-to-promote claims. The charge does not mention Kenion's race, does not refer to any protected activities or complaints of retaliation, does not reference any acts which could constitute a hostile work environment, and does not allege that she left her employment as a result of discriminatory treatment. On the EEOC charge form, Kenion elected not to check the "race" or "retaliation" box. Instead, Kenion's charge concisely alleges she had "been discriminated against due to [her] sex." (Def. Ex. 1, ECF No. 3-2.) The sole allegation of sex-based discrimination is the Defendants' alleged failure to officially promote her to Assistant Superintendent or compensate her for the duties she performed in that role. Although the charge mentions that Kenion resigned "on or about the spring of 2018," it does not even hint that her resignation was a result of the limited forms of disparate treatment briefly described in the charge. Kenion cannot now assert new Title VII claims premised on other types of discrimination beyond this very limited form of sex-based discrimination.

## A. Plaintiff's EEOC Charge Does Not Encompass Hostile Work Environment, Retaliation, and Constructive Discharge Claims.

Kenion urges a broader view of her EEOC Charge. She argues that the charge's fleeting reference to disparate treatment in "terms and conditions of employment" encompasses the full-fledged hostile work environment, retaliation, and constructive discharge claims she now advances in her Complaint. Kenion asserts that *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179 (4th Cir. 2000) is "dispositive." In *Conner*, the United States Court of Appeals for the Fourth Circuit considered whether the record evidence supported the jury's finding of a hostile work environment. 227 F.3d at 200. In a footnote, the Court referenced three additional arguments raised by the Defendant which did not require the Court's full analysis. 227 F.3d

14

at 200 n.19. Among these was an argument that the Plaintiff's harassment claim exceeded the scope of her EEOC charge, which alleged that she was "harassed and subjected to different terms and conditions of employment . . . and in general was treated different than the males." *Id.* The Fourth Circuit summarily concluded that her harassment claim in her judicial complaint was "reasonably related" to her EEOC charge. *Id.* Additionally, Plaintiff invokes *Phillips v. Prince George's Cmty. Coll.*, PWG-17-1581, 2018 WL 835709 (D. Md. Feb. 12, 2018), in which this Court noted that a reasonable investigation into an EEOC charge could touch upon forms of discrimination which were not identified in the charge. 2018 WL 835709, at *4. As Plaintiff acknowledges, however, this Court ultimately concluded that a Plaintiff's failure to mention racial harassment, hostile work environment, and racial bias claims in an EEOC charge foreclosed him from asserting these claims. *Id.*

Neither *Conner* nor *Phillips* supports Kenion's position. The EEOC charge at issue in *Conner* explicitly alleged that the plaintiff had been "harassed." In contrast, Kenion's EEOC charge does not mention harassment and is devoid of a single reference to conduct which could give rise to a hostile work environment claim. To read a race and sex-based hostile work environment claim into Kenion's unadorned reference to disparate treatment "in terms or conditions of employment" would effectively do away with Title VII's administrative exhaustion requirements which, as explained *supra*, are designed to put Defendants on notice of the charges against them. Moreover, as *Phillips* counsels, Kenion may not advance new types of claims—including retaliation and constructive discharge claims—for the first time in her formal Complaint.

**B. This Court May Not Probe the EEOC Investigative File to Broaden the Scope of Plaintiff's Charge.**

15

Next, Kenion invites this Court to reach beyond the administrative charge and probe the EEOC investigative file, including an EEOC Inquiry intake questionnaire (Pl.'s Ex. 9, ECF No. 6-9), emails to an EEOC investigator (Pl.'s Ex. 4, ECF No. 6-4; Pl.'s Ex. 6, ECF No. 6-6), and her 2018 letter of resignation (Pl.'s Ex. 3, ECF No. 6-3). An examination of these records, Plaintiff argues, will reveal that she in fact raised issues of race discrimination, retaliation, hostile work environment, and constructive discharge. Her current Title VII claims, she asserts, are therefore "reasonably related" to the sparse allegations contained in her charge and have been subject to administrative exhaustion.

It is the EEOC charge, not the totality of the EEOC investigative file, that defines the scope of Plaintiff's claims. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained *in the administrative charge of discrimination* generally operate to limit the scope of any subsequent judicial complaint.") (emphasis added). In *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit considered and rejected similar efforts to broaden the scope of an EEOC charge by reference to the investigative file. In that case, the Fourth Circuit considered whether the district court erred by considering only the plaintiff's amended EEOC charge, and not the contents of her intake questionnaire or two letters submitted to the EEOC. 711 F.3d at 406. The Court held that it did not. Acknowledging that EEOC charges must be construed liberally, the Court nevertheless warned against reading into administrative charges "allegations they do not contain." *Id.* at 408. Drawing on well-established Fourth Circuit precedent, the Court once again reaffirmed that reference to the EEOC investigative file would contravene the administrative exhaustion requirement of Title VII and is therefore

16

impermissible. *Id.* (quoting *Evans* 80 F.3d at 962-63); *see also Rashid v. Washington Metro. Area Transit Auth.*, DKC-17-0726, 2018 WL 1425978, at *5 (D. Md. March 22, 2018) (rejecting plaintiff's attempts to expand the scope of the EEOC charge by reference to the EEOC intake questionnaire).

This Court may not reach beyond the EEOC Charge to broaden its scope. Kenion's charge put Defendants on notice of a limited set of accusations pertaining only to the failure to promote and the failure to provide adequate pay based on racial discrimination. At this late stage, after the termination of EEOC proceedings, it would be unfair to broaden the scope of Kenion's claims based on information contained in an EEOC intake form and communications sent to an EEOC investigator.

## C. Equitable Considerations do not Require This Court to Radically Alter Plaintiff's EEOC Charge.

Finally, Plaintiff beseeches this Court to apply "equitable considerations" to excuse her failure to omit from her EEOC charge any reference to race-based discrimination, retaliation, a hostile work environment, and constructive discharge. She now claims that the Washington Field Office investigator with whom she was in contact improperly "recommended" that she proceed "solely on a claim of sex discrimination" and told her that she "should not include all of [the] detail" she originally intended to submit in her charge. (Pl.'s Resp. 13, ECF No. 6; Pl.'s Ex. 1, Kenion Decl. ¶ 6, ECF No. 6-1.)

In extreme circumstances, other courts outside of this circuit have permitted plaintiffs to proceed on claims which the EEOC improperly discouraged them from advancing in the first instance. These cases either involve improper instruction on matters of procedure, *see Moreland v. Johnson*, 806 F.3d 961 (7th Cir. 2015) (plaintiff erroneously instructed by

17

administrative law judge to file new charge of discrimination rather than amend current charge); misstatements of the law, *see Agnotti v. Kenyon & Kenyon*, 929 F. Supp. 651 (S.D.N.Y. 1996) (baseless assertion that claim would be rejected if plaintiff checked the "retaliation" box on the EEOC charge form); or outright refusals to accept the claimant's allegations, *see Jennings v. American Postal Workers Union*, 672 F.2d 712 (8th Cir. 1982) (EEOC representative informed plaintiff that it lacked jurisdiction over her complaint).

This case is not so extreme. It appears from Kenion's declaration that she and the EEOC investigator were involved in a give-and-take dialogue. Kenion claims that she spoke with an EEOC investigator for "well over an hour" and provided him "detailed information" about her allegations. (Kenion Decl. ¶ 5.) In response, the investigator advised Kenion refrain from "includ[ing] all of this detail" in her Charge. (*Id.* at ¶ 6.) He then drafted the charge for her and marked only the box next to the word "Sex," indicating that Kenion was complaining only of sex discrimination. While perhaps it was not within the investigator's purview to provide strategic advice of this kind and propose changes to Kenion's allegations, his recommendation to distill an hour-long phone conversation into a digestible EEOC charge hardly amounts to the outright refusals and misstatements of the law at issue in cases like *Moreland, Agnotti,* and *Jennings*. Moreover, there is no indication—unlike in the cases upon which plaintiff relies—that the investigator would have rejected Kenion's allegations altogether. Kenion had the opportunity to modify or object to the charge the investigator drafted for her, but instead chose to sign it as originally drafted. Subsequently, she did not elect to file an amended charge. Under these circumstances, "equitable considerations" do not require this Court to radically alter the scope of Kenion's EEOC charge.

18

Kenion's EEOC charge is limited in scope. It is confined to two claims: (a) a failure to promote claim, and (b) a claim based on Skanska's failure to pay her for acting as an Assistant Superintendent, both on the basis of sex. This Court may not read into the charge allegations which it does not contain, probe the EEOC investigative file for information helpful to the plaintiff, or apply equitable remedies where inequity cannot be found. The scope of the charge limits the scope of this lawsuit. Accordingly, the following Title VII claims are DISMISSED for failure to state a claim pursuant to Rule 12(b)(6): Hostile Work Environment Based on Race and Sex, as alleged in Count I; Retaliation as alleged in Count II; Non-Selection/Failure to Promote Based on Race, as alleged in Count III; and Constructive Discharge Based on Race and Sex, as alleged in Count IV.

## II.    Plaintiff Has Failed to Allege a Sex-Based Hostile Work Environment Claim.

Defendants argue that both Plaintiff's Title VII and DCHRA sex-based[3] hostile work environment claims (Counts I and V) must be dismissed because the Complaint fails to allege any sex-based harassment. (*Id.* at 2.) This Court has already ruled that Plaintiff's Title VII hostile work environment claim must be dismissed because of the failure to exhaust administrative remedies. For the sake of establishing a complete record, this Court considers Defendant's arguments as potential alternative bases for dismissal of Plaintiff's Title VII hostile work environment claim based on sex.

To establish a sex-based hostile work environment claim under Title VII, Plaintiff must ultimately show that the alleged conduct: (1) was unwelcome; (2) resulted because of her sex;

---

[3]    Defendants do not seek dismissal of Plaintiff's race-based hostile work environment claims on these grounds.

(3) was sufficiently "severe or pervasive" to alter the conditions of employment; and (4) was attributable to her employer. *Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009) (quoting *Ocheltree v. Scollon Prods. Inc.*, 335 F.3d 325, 338 (4th Cir. 2003) (en banc)). The legal standard for establishing a hostile work environment claim under the DCHRA is "substantively the same." *Williams v. Dist. of Columbia*, 317 F. Supp. 3d 195, 199 (D.D.C. 2018). Defendants argue that the Complaint fails to allege that the offending conduct was "because of" Kenion's sex, claiming that the Complaint focuses "entirely" on race and not sex. (Def.'s Mot. to Dismiss 10, ECF No. 3-1.) Additionally, Defendants argue that the Complaint fails to allege sufficiently "severe or pervasive" harassment.[4] (Def.'s Reply 10-14, ECF No. 7.)

### A. Plaintiff Has Sufficiently Alleged That the Defendant's Alleged Conduct Resulted "Because of" Sex.

Defendant's first argument is unavailing. At this stage, plaintiff need only allege facts which, taken as true, would support a reasonable inference that the alleged conduct was motived by discriminatory bias. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585-86 (4th Cir. 2015). Plaintiffs may meet this requirement by alleging, for example, that other, less-qualified candidates outside of the protected class received more favorable treatment than better qualified candidates within the class. *Cf. Id.* at 586 (finding that plaintiff had failed to meet pleading standard because the Complaint merely invited "speculation" as to why two "non-Black candidates" were chosen over the plaintiff); *see also Purnell v. Maryland*, 330 F. Supp. 2d 551, 559 (noting that discrimination may be inferred "when the position applied for is filled by a less qualified member of a non-protected class").

---

[4]     This argument was raised for the first time in Defendant's Reply. Accordingly, Plaintiff's Motion for Leave to file a Sur-Reply (ECF No. 8) is GRANTED. *See Tech USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009).

In this case, Kenion has sufficiently alleged that the actions she complained of were "because of" her sex. The Complaint specifically alleges that: (1) Kenion was the only female field construction supervisor (Compl. ¶ 25); (2) she was initially excluded from a pay increase that all male staff received (*Id.* at ¶ 39); (3) that her Caucasian male supervisors assigned a Caucasian *male* intern supervisory responsibilities while assigning a Black *female* intern only office administrative tasks (*Id.* at ¶¶ 41-42); and (4) that Kenion lost a promotion to a less-qualified Caucasian *male* intern whom she had trained (*Id.* at ¶¶ 44-49). These allegations, taken as true, suggest that the actions complained of in the Complaint arose "because of" Kenion's sex.

## B. The Complaint Fails to Allege "Severe or Pervasive" Sex-Based Harassment.

This does not end the inquiry. Defendants alternatively argue that the Complaint fails to allege that she experienced "severe or pervasive" sex-based harassment as required to state a hostile work environment claim. To determine whether the alleged conduct is sufficiently "severe or pervasive," courts consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Evans v. Int'l Paper Co.*, --- F.3d ---, 2019 WL 4018287, at *5 (4th Cir. Aug. 27, 2019) (*quoting EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). Plaintiffs face a "high bar." *Id.* Merely alleging "rude treatment from coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor" does not suffice. *Id.*; *see also Bacchus v. Price*, GJH-17-1511, 2018 WL 3575055, at *7 (D. Md.

July 25, 2018) (holding that alleged "loss of teleworking privileges, re-assignments, and receipt of unwarranted criticism" could not support hostile work environment claim).

The Complaint fails to allege that Kenion experienced "severe or pervasive" sex-based harassment. At most, the Complaint alleges that Kenion received unfair treatment because of her sex. Her suggestions were allegedly dismissed without adequate justification (Compl. ¶ 27); she was forced to report to work during the weekend (Compl. ¶ 57); and was passed over for promotion and (at least initially) denied a 3% raise (Compl. ¶¶ 39, 44, 54). These sorts of allegations are more akin to "offensive utterances" and "callous behavior" than to the sort of gravely serious harms or humiliations which may form the basis of a hostile work environment claim. *See Evans*, 2019 WL 4018287, at *5. Plaintiff cannot proceed on a sex-based hostile work environment claim under either Title VII or the DCHRA on the force of these allegations. Accordingly, Plaintiff's sex-based hostile work environment claims (Counts I and V) are DISMISSED.

In her proposed Sur-Reply, Plaintiff argues for the first time that she intends to bring a single harassment claim based on *both* race and sex. The Complaint is ambiguous on this point. The Complaint twice refers to "racial harassment" and brings numerous allegations under the heading "Racial Harassment and Discrimination at the DC Water Headquarters Project." (Compl. ¶¶ 26, 53.) In other places, however, the Complaint refers to both "race and sex" discrimination and harassment (Compl. ¶¶ 1, 65, 85.) Defendants indicate that they would not object to a future amended Complaint to remedy this confusion, and even urge that this Court "should provide [Plaintiff] with an opportunity to amend her DCHRA hostile work environment claims to clarify that she is alleging that Defendants subjected her to a hostile

22

work environment because she is an African American woman (*i.e.*, a combination of her "race plus gender"). (Def. Obj. 3-4, ECF No. 9.) Accordingly, Plaintiffs' sex-based hostile work environment claim under the DCHRA is dismissed WITHOUT PREJUDICE. Plaintiff may file an Amended Complaint which clarifies the nature and scope of her hostile work environment claim under the DCHRA (Count V).

### III. Plaintiff has Failed to Allege a Constructive Discharge Claim.

Finally, Defendants seek dismissal of Plaintiff's Title VII and DCHRA constructive discharge claims based on race and sex (Counts IV and VIII), arguing that she has failed to adequately allege that (a) Defendants deliberately intended for her to resign; and (b) that her working conditions were so intolerable that any reasonable person in her position "would have had no choice but to resign. (*Id.*) As with Plaintiff's Title VII hostile work environment claim, this Court has previously disposed of Plaintiff's Title VII constructive discharge claim on administrative exhaustion grounds. Nevertheless, this Court considers Defendants' additional arguments concerning Plaintiff's Title VII constructive discharge claim as potential alternative reasons for dismissing the claim.

As a preliminary matter, this Court may safely dispose of the Defendant's argument that Kenion has failed to adequately plead a Title VII constructive discharge claim because she has not alleged that Defendants acted with "deliberateness." In *Green v. Brennan*, 136 S. Ct. 1769, 1779-80 (2016), the Supreme Court explicitly stated that Plaintiff need not show that "not only was the discrimination so bad that [she] had to quit, but also that [her] quitting was [her] employer's plan all along." Following *Green*, the Fourth Circuit confirmed that "'deliberateness' is no longer a component of a constructive discharge claim" under Title VII.

23

*EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017). Accordingly, Kenion need not allege that her employer created an intolerable work environment with her resignation in mind to state a claim for constrictive discharge under Title VII.[5]

To state a constructive discharge claim under both Title VII and the DCHRA, Kenion must sufficiently allege that her work conditions were so intolerable that a "reasonable person in [her] position would have felt compelled to resign." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)). To adequately allege a constructive discharge claim under both Title VII and the DCHRA, the Plaintiff must plead "something more than . . . a hostile work environment claim alone." *Walden v. Patient-Centered Outcomes Research Institute*, 177 F. Supp. 3d 336, 346 (D.D.C. 2016) (discussing constructive discharge claim under DCHRA) (citation omitted); *see also Ndadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) (unpublished) ("[B]ecause Nnadozie cannot maintain a hostile work environment claim, the district court properly dismissed her claims of constructive discharge."). The Plaintiff's "mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004)). Even yelling, public chastisements, and forced work under unsafe conditions cannot support such a claim. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004).

---

[5]     The parties disagree over whether the DCHRA still requires this level of deliberateness. This Court need not reach this issue because it finds that Plaintiff has failed to state a constructive discharge claim on other grounds.

As previously explained, Kenion has failed to plead a sex-based hostile work environment claim. Although she has adequately alleged that she experienced workplace discomforts and inequitable treatment, she has not alleged misconduct so "severe and pervasive" as to give rise to a sex-based hostile work environment claim. Consequently, she cannot satisfy the more stringent requirements of a sex-based constructive discharge claim under either Title VII or the DCHRA. Kenion has also failed to state a claim of constructive discharge arising from race-based discrimination. The Complaint alleges only that her supervisors made racially insensitive remarks between January and March 2017, none of which were directed at Kenion. She did not resign until a full year after these remarks were made and the Complaint does not suggest that her resignation resulted from these comments. Finally, even attributing all of allegations in the Complaint to both race and sex-based discrimination—including the failure to promote, the denial of overtime work, scheduling on weekends, and rumors that her supervisor was "not interested" in hiring her for a particular position—such allegations cannot support a constructive discharge claim. Such "difficult and unpleasant" working conditions do not, as a matter of law, give rise to a constructive discharge claim. Plaintiffs' constructive discharge claims under Title VII and the DCHRA (Counts IV and VIII) are therefore DISMISSED.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Partially Dismiss Plaintiff's Complaint (ECF No. 3) is GRANTED and Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 8) is GRANTED. Specifically, Counts I, II, IV, and VIII are DISMISSED in their

entirety, and the remaining Counts III, V, VI, VII are limited as noted. The following claims remain pending: Discriminatory Non-Selection for Promotion on the basis of sex in Violation of Title VII (Count III) and on the basis of both race and sex in violation of the DCHRA (Count VII); Discriminatory Hostile Work Environment on the basis of race in Violation of the DCHRA (Count V); and Retaliation under DCHRA (Count VI). Plaintiff is granted leave to file an Amended Complaint to clarify the nature and scope of her Hostile Work Environment Claim under the DCHRA as charged in Count V.

A separate Order follows.

Dated: September 13, 2019

_____

Richard D. Bennett
United States District Judge